IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN G. LOEHR              )
                                )
           Plaintiff,     )
                                )
vs.                             )          No. CIV 07-460 RB/RLP
                                )
ALLSTATE INSURANCE COMPANY, )
                                )
           Defendant.   )
                                )

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Allstate's Motion for Partial Summary Judgment [Doc. 21] and Plaintiff John G. Loehr's Motion for Partial Summary Judgment [Doc. 34].  Jurisdiction arises pursuant to 28 U.S.C. §§ 1441, 1332,[1] and 1367.  After reviewing both parties' submissions and the relevant law, I hereby **GRANT**, in part, and **DENY**, in part, Defendant's Motion for Partial Summary Judgment.  In light of my decision on Defendant's motion, I hereby **DENY** Plaintiff's Motion for Partial Summary Judgment as moot.

## I.  BACKGROUND

Plaintiff John G. Loehr was involved in an automobile accident in Albuquerque, New Mexico on December 20, 1999, and the accident caused him injury.  (Cmplt. [Ex. A to Doc. 1] at ¶¶ 2, 4; Def.'s Mem. Supp. Mot. Partial Summ. J. [Doc. 22] at ¶ 1).  Both parties appear to agree that the other driver was the tortfeasor (*see* Cmplt. at ¶ 2; Def.'s Mem. Supp. Mot. Partial Summ.

---

[1]  An action initiated by an insured against his own insurance company is not subject to the 28 U.S.C. § 1332(c)(1) diversity limits on direct actions against insurers.  *Irvin v. Allstate Ins. Co.*, 436 F. Supp. 575, 577 (W.D. Okla. 1977).

J. at ¶ 2), and the tortfeasor's insurer paid Plaintiff $25,000 (Def.'s Mem. Supp. Mot. Partial Summ. J. at ¶ 2). Thereafter, Plaintiff filed an uninsured/underinsured motorist ("UM") claim with his own insurance company, Defendant Allstate Insurance Company. (*Id.* at ¶ 3). The policy declarations reflect a $25,000 limit, per person, for "uninsured motorists insurance for bodily injury." (Ex. 2 to Def.'s Mem. Supp. Mot. Partial Summ. J. at 6). The policy declarations also reflect that $100,000 bodily injury liability insurance was available, per person, for each vehicle. (*Id.* at 2-5). A dispute over the UM claim arose because Plaintiff believed he was entitled to stack[2] UM coverage for all four vehicles covered by the policy (resulting in a $100,000 limit), while Defendant believed Plaintiff was only entitled to stack coverage for two vehicles (resulting n a $50,000 limit). (*See* Def.'s Mem. Supp. Mot. Partial Summ. J. at ¶¶ 5-6).

Plaintiff, with the assistance of an attorney, partially settled the dispute with Defendant by agreeing to accept $25,000[3] in UM coverage from Defendant while also preserving his right to seek additional UM coverage from Defendant via a "Reserved Claim." (Partial Settlement Agreement & Release (Ex. 1 to Def.'s Mem. Supp. Mot. Partial Summ. J.) at 1,  ¶¶ 3-5, 7). The Partial Settlement Agreement and Release ("Release"), dated October 11, 2001, contains five paragraphs of particular importance:

> WHEREAS John G. Loehr made a claim . . . for stacked UM coverage limits of $100,000.00 . . .

---

[2] "Stacking refers to an insured's attempted recovery of damages under more than one policy, endorsement, or coverage by placing one policy, endorsement, or coverage, etc. upon another and recovering from each in succession until either all of his damages are satisfied or until the total limits of all policies, endorsements, coverages, etc. are exhausted, even though the insured has not been fully indemnified." *Lopez v. Found. Reserve Ins. Co.*, 646 P.2d 1230, 1232 (N.M. 1982) (internal quotations omitted).

[3] To reach this amount, the parties stacked two vehicles, resulting in a $50,000 limit, and then subtracted a $25,000 offset to reflect the payment from tortfeasor's insurer. (Partial Settlement Agreement & Release (Ex. 1 to Def.'s Mem. Supp. Mot. Partial Summ. J.) at 1).

WHEREAS, the parties hereto have agreed to a partial settlement of this matter as between John G. Loehr and Allstate *under which John G. Loehr expressly reserves his right to seek an additional $50,000.00 in UIM coverage from Allstate* . . . .

\*              \*              \*

4.  In exchange for this agreement, John G. Loehr shall release Allstate from any and all liability arising from the December 20, 1999 accident, *with the exception of his claim against Allstate for an additional $50,000.00 in UIM coverage (the disputed "Reserved Claim").*

5.  In exchange for the consideration set forth above, which all parties hereby acknowledge as good and valuable consideration, John G. Loehr and his . . . successors . . . (the "Releasing Parties"), hereby fully and forever release and discharge Allstate Insurance Company, and its . . . successors  . . . (the "Released Parties"), from each and every claim, debt, or cause of action arising on or before the date hereof, out of the December 20, 1999 accident, the Releasing Parties had, have, or may have in the future against the Released Parties, which related in any way whatsoever to the December 20, 1999 accident and/or the policy with respect to the accident, *with the express exception of the disputed Reserved Claim, which is not released.*

6.  *This is a settlement of undisputed claims* as to damages, policy benefits, punitive damages, bad faith damages, prejudgment interest, attorneys' fees, expenses, and costs . . . .

(*Id.* at 1, 4, ¶¶ 4-6) (emphases added).

Despite this agreement, despite the fact that Plaintiff's attorney took part in drafting the Release (*see* Ex. 3 to Def.'s Mem. Supp. Mot. Partial Summ. J.), and despite the fact that Plaintiff recognized his duties under the Release (*see id.*), Plaintiff now claims that he is entitled to recover up to $400,000 in stacked UM coverage.  In support of his position, Plaintiff cites New Mexico law that may require UM coverage to equal liability coverage, unless the insured specifically rejects that coverage.  (*See* Cmplt. at ¶¶ 10-12).  The New Mexico Court of Appeals decided *State Farm Mut. Auto. Ins. Co. v. Marquez* on June 11, 2001, which may, arguably,

require equivalent UM coverage.  *See* 28 P.3d 1132, 1134 (N.M. Ct. App. 2001).  Lastly, Plaintiff contends that Defendant misrepresented, or misunderstood, the maximum amount of UM coverage available to Plaintiff when the parties negotiated the Release.  (*See* Dep. John G. Loehr [Ex. 11 attached to Doc. 35] at 61, 63, 66, 70).

## II.    STANDARDS

### A.    Summary Judgment

"[I]f the pleadings [and] the discovery and disclosure materials on file . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" then summary judgment is proper.  Fed. R. Civ. P. 56(c).  "If summary judgment is not rendered on the whole action, the court [will], to the extent practicable, determine what material facts are not genuinely at issue, . . . [and those facts must be treated as established]."  Fed. R. Civ. P. 56(d).  Courts "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the [nonmovant]."  *Sierra Club v. El Paso Gold Mines, Inc.*, 421 F.3d 1133, 1146 (10th Cir. 2005).  "The movant bears the initial burden of . . . demonstrati[ng] . . . the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

If the movant meets this burden, then "the burden shifts to the nonmovant."  *Id.* at 671. The nonmovant must "go beyond the pleadings and set forth" admissible evidence consisting of "specific facts . . . from which a rational trier of fact could find for the nonmovant."  *Id.* (citations and internal quotations omitted).  The nonmovant must identify these facts with "reference to . . . deposition transcripts or specific exhibits . . . ."  *Id.* (citations omitted).  The

nonmovant must show more than a mere "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), and he must base his evidence "on more than [bare] speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmovant cannot rely purely on "conclusory allegations . . . to defeat . . . a motion for summary judgment." *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

#### B.    State Law

Federal courts sitting in diversity "seek to ascertain and apply . . . state law." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (internal quotations omitted). If state law does not address the issue, federal courts "must . . . predict what the state's highest court would do." *Id.* at 666 (internal quotations omitted). To determine what the highest court would do, federal courts may look to "decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (internal citations and quotations omitted).

### III.   DISCUSSION

#### A.    The Release

##### 1.    New Mexico Law

"Releases . . . are governed by the law[] of contracts . . . ." *Ratzlaff v. Seven Bar Flying Serv., Inc.*, 646 P.2d 586, 589 (N.M. Ct. App. 1982). New Mexico public policy favors the settlement of claims without litigation. *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1139 (N.M. Ct. App. 1983). Because New Mexico favors settlement, courts "have a duty to enforce[]

settlement agreements." *Bd. of Educ. for Carlsbad Mun. Schools v. N.M. State Dep't of Pub. Educ.*, 993 P.2d 112, 115 (N.M. Ct. App. 1999). The party seeking relief from a settlement contract bears the burden of persuasion. *Design Prof'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 940 P.2d 1193, 1199 (N.M. Ct. App. 1997) (citing *Gonzales v. Atnip*, 692 P.2d 1343, 1344 (N.M. Ct. App. 1984)).

As a threshold matter, a court must discern "the essential terms of a contract in litigation . . . ." *C.R. Anthony Co. v. Loretto Mall Partners*, 817 P.2d 238, 241 (N.M. 1991). "Contract interpretation is the process of giving meaning to the symbols of expression used by the parties." *Id.* at 241. The court's task is "to determine the meaning [the parties] attached to a particular term or expression at the time the parties agreed to those provisions." *Id.* at 243. "[W]hether an ambiguity . . . exists in the wording of a . . . contract is a question of law." *Design Prof'l*, 940 P.2d at 1196; *Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 12 P.3d 431, 437 (N.M. 2000). Typically, courts ascribe ambiguity to situations where there is a "lack of clarity in the parties' expressions of mutual assent." *Loretto*, 817 P.2d at 243 n.2. An ambiguity only exists if "the contract is reasonably and fairly susceptible [to] different construction[s]." *Design Prof'l*, 940 P.2d at 1197. The "reasonable interpretation of a contract is favored." *Loretto*, 817 P.2d at 244 n.5 (citing *Smith v. Tinley*, 674 P.2d 1123, 1125 (N.M. 1984)). Moreover, courts construe ambiguities against the drafter. *Loretto*, 817 P.2d at 244 n.5 (citing *Schultz & Lindsay Constr. Co. v. State*, 494 P.2d 612, 614 (N.M. 1972)).

A recent New Mexico Supreme Court decision, *Battishill v. Farmers Alliance Ins. Co.*, 127 P.3d 1111 (N.M. 2006), offers some insight into how the New Mexico Supreme Court would interpret the Release. *Battishill*, though it dealt with the interpretation of insurance policies, is helpful in clarifying that New Mexico recognizes that an ambiguity does not always

6

arise if the parties favor contradictory interpretations of the contract.  127 P.3d at 1115 (citing 2

Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 21:11 3d ed. 2005).  Furthermore, the

case makes clear that New Mexico courts will not "[r]esort . . . to a strained construction for the

purpose of [find]ing an ambiguity whe[re an] ambiguity [does not,] in fact, exist[]." *Battishill*,

127 P.3d at 1115.  Finally, where a written release is unambiguous, New Mexico law requires

clear and convincing evidence "of misrepresentation, fraud, undue influence, coercion, or mutual

mistake [in order to set aside or avoid the release.]" *Hendren*, 672 P.2d at 1139; *Ratzlaff*, 646

P.2d at 590 ("[T]he policy of our law is to favor amicable settlement of claims without litigation

when the agreements are fairly secured, are without fraud, misrepresentation, or overreaching,

and when they are supported by consideration.").

       Though Defendant maintains that the plain language of the Release is unambiguous

(Def.'s Mem. Supp. Mot. Partial Summ. J. at 5-6), Defendant nevertheless proffers evidence

purporting to demonstrate a lack of ambiguity (*see* Ex. 2-8 to Def.'s Mem. Supp. Mot. Partial

Summ. J.).  Plaintiff argues that the proffered evidence is actually parol evidence.  (Pl.'s Resp. to

Def.'s Mot. Summ. J. [Doc. 23] at 6).  The parol evidence rule is a substantive rule of law "that

bars admission of evidence extrinsic to the contract to contradict and perhaps even to supplement

the writing." *Loretto*, 817 P.2d at 243.  The parol evidence rule bars courts from looking to

collateral evidence to interpret a contract "in a manner that varies or contradicts the clear and

unambiguous language of the writing." *Id.* at 241.  The rule, however, permits admission of

evidence that aids the court "in determining whether [the] chosen terms are clear." *Mem'l Med.*

*Ctr.*, 12 P.3d at 437.  In making this determination, "a court may hear evidence of the

circumstances surrounding the making of the contract . . . ." *Id.*  If the contract is unambiguous,

7

collateral evidence that varies or modifies terms is inadmissible." *Loretto*, 817 P.2d at 242. Additionally, if the proffered evidence does not establish that a term is unclear, "the court is not obliged to admit the evidence." *Mem'l Med. Ctr.*, 12 P.3d at 437.

If the Court is inclined to rule for Defendant, Plaintiff contends that the Court should hold an evidentiary hearing rather than grant Defendant's Motion for Partial Summary Judgment. (Pl.'s Resp. to Def.'s Mot. Summ. J. at 5). New Mexico requires a full evidentiary hearing on the meaning of a contract if facts are at issue and "if the proffered evidence is in dispute, turns on witness credibility, or is susceptible [to] conflicting inferences." *Loretto*, 817 P.2d at 244. Despite this, the evidence may be "so clear that no reasonable person would determine the issue before the court in any way but one." *Id.* In that instance, contract interpretation becomes a question of law. *Id.*; *see also Mem'l Med. Ctr.*, 12 P.3d at 437. ("[T]he . . . court ruled the lease was not ambiguous as a matter of law . . . ."). The Tenth Circuit appears to require a similar rule, at least in the context of approving settlements of litigation already before the court. *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993) ("[W]here material facts concerning the existence or terms of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing.").

Throughout the pleadings, Defendant emphasizes that Plaintiff entered into the Release with the advice of counsel. New Mexico courts are more apt to enforce settlement agreements negotiated between an insurer and a represented insured. *See Ratzlaff*, 646 P.2d at 591 ("The practice of providing a claimant with independent counsel incident to the negotiation of . . . releases in order to assure [that he] fully comprehends his rights and the terms of any settlement . . . is highly commended."); *see generally Atnip*, 692 P.2d at 1349 (illustrating that an attorney's

authorized settlement is binding on her client).   Language in two other New Mexico cases supports this position.   In both cases, the New Mexico Supreme Court noted its focus on the objective expectations of the insured because "a hypothetical reasonable insured [is] assume[d to] have limited knowledge of insurance law," *Battishill*, 127 P.3d at 1114, and insurance language may be "such that a layman would not understand its full impact," *Romero v. Dairyland Ins. Co.*, 803 P.2d 243, 248 (N.M. 1990).   Additionally, New Mexico courts appear to look with disfavor upon cases where an insured has settled a dispute with his insurer without the benefit of legal representation.   Noting the parties' unequal bargaining positions in *Hendren*, *see* 672 P.2d at 1141, the New Mexico Court of Appeals reversed a lower court's summary judgment in favor of the insurer because, in part, the  "plaintiff did not seek legal advice because the [insurer] told him it would be a waste of money."  672 P.2d at 1140.  Moreover, the *Hendren* court reiterated that insurers "continue[] to have a duty to deal fairly and in good faith with its insured in settling a claim under the [UM] provisions of the automobile insurance contract."  672 P.2d at 1141.

### 2.   Arguments

#### a.   Defendant

As noted above, Defendant argues that the Court should follow the plain language of the Release.  (Def.'s Mem. Supp. Mot. Partial Summ. J. at 5-6).  Defendant further contends that the Release is not ambiguous (*id.* at 6), and that Plaintiff has brought forth no evidence that would provide this Court with reason to permit avoidance of the Release (*id.* at 6-7).  Defendant maintains that the Release defines and limits Plaintiff's Reserved Claim (Def.'s Reply Mem. Supp. Mot. Partial Summ. J. [Doc. 24] at 1, 3), and that Plaintiff has not presented evidence

reflecting a dispute over the intent of the parties (*id.* at 3).  Defendant urges this Court to consider all of its exhibits, despite Plaintiff's contentions that some of the exhibits are parol evidence.  (*Id.* at 4-5).  Lastly, Defendant takes the position that this case does not require an evidentiary hearing because Defendant does not seek to enforce the Release, but rather intends the Release to serve as a defense.  (*Id.* at 5).

> **b.**    **Plaintiff**

Plaintiff maintains that the Release completely excepted the Reserved Claim from the settlement (Pl.'s Resp. to Def.'s Mot. Summ. J. at 1, 3-4, 6-7), and that the Release imposed no obligations upon either party with regard to the Reserved Claim (*id.* at 1-2, 4, 6).  Specifically, Plaintiff contends that the language in the Release does not reflect that the parties negotiated the worth of the Reserved Claim and that the language referencing the Reserved Claim is not binding.  (*Id.* at 1-2).  To support this contention, Plaintiff points out that the Release does not set out how the parties were to resolve the Reserved Claim.  (*Id.* at 1-2, 4).  Instead, Plaintiff argues that the language in the Release merely *describes* the dispute that gave rise to the Reserved Claim (*see id.* at 4-6), and that this description does not amount to a contract term (*id.* at 6).  Plaintiff further maintains that "there is a significant dispute in this case as to the intention of the parties to the Release."  (*Id.* at 8).

Moreover, as noted above, Plaintiff argues that Defendant's Exhibits are parol evidence.  (*Id.* at 6).    Plaintiff goes on to indicate that Defendant's submission of these exhibits demonstrates that the Release is ambiguous.  (*Id.* at 7).  Plaintiff also maintains that Defendant's Motion for Partial Summary Judgment is actually a motion to enforce the Release and that the Court should hold an evidentiary hearing rather than grant Defendant's motion.  (*Id.* at 4-6).

Additionally, Plaintiff argues that genuine questions of material fact remain on the question of misrepresentation and that the Court should, therefore, afford Plaintiff the opportunity to conduct discovery on the issue.  (*Id.* at 9).  Lastly, Plaintiff contends that Defendant may have violated its duty of good faith and fair dealing in the negotiation of the Release.  (*Id.* at 8-9).

### 3.    Analysis

Defendant's Exhibits 4, 5, 6, 7, and 8 are parol evidence because they do not provide the Court with information about the circumstances surrounding the formation of the Release. *Mem'l Med. Ctr.*, 12 P.3d at 437.  Instead, the Court believes the submission of these documents is an attempt to "supplement the writing."   *See Loretto*, 817 P.2d at 243.  To the extent that Defendant submits these documents for the purpose of interpreting the Release, they will not be considered by the Court.  *See Mem'l Med. Ctr.*, 12 P.3d at 437.  Defendant's Exhibits 2 and 3, however, are not parol evidence[4] because both exhibits shed light on the circumstances surrounding the formation of the Release and aid the Court in determining  whether the Release terms are ambiguous.  *See id.*  Exhibit 2 is simply a copy of the policy declarations in effect at the time of the accident.  (*See* Ex. 2 to Def.'s Mem. Supp. Mot. Partial Summ. J.).  Exhibit 3, a letter from Plaintiff's previous attorney to Defendant's attorney, reveals that Plaintiff's attorney took part in drafting the Release, that the parties intended the Release to settle the "undisputed amount," and that Plaintiff recognized his duty to Defendant.  (*See* Ex. 3 to Def.'s Mem. Supp. Mot. Partial Summ. J.).

The essential terms of the Release are embedded in the third and final WHEREAS paragraphs, as well as in paragraphs four through six.  (*See* Release at 1, ¶¶ 4-6).  The final

---

[4] Plaintiff does not appear to challenge the Court's consideration of Defendant's Exhibits 1 and 11.  (*See* Pl.'s Resp. to Def.'s Mot. Summ. J. at 6).  Exhibits 9 and 10 are legislative bills.

WHEREAS paragraph and paragraph four each reference Plaintiff's Reserved Claim in the context of $50,000.  (*Id.* at 1, ¶ 4).  Paragraph five releases all claims except the Reserved Claim. (*Id.* at ¶ 5).  Paragraph six states that the Release was a "settlement of undisputed claims . . . ." (*Id.* at ¶ 6).  Another essential term is the total amount available to Plaintiff through the combination of the settlement, tortfeasor payment, and the Reserved Claim.  *See Loretto*, 817 P.2d at 241.  The Court thinks it clear that both parties negotiated with reference to a $100,000 ceiling: "WHEREAS John G. Loehr made a claim . . . for stacked UM coverage limits of $100,000.00 . . . ."  (Release at 1).  Moreover, there is nothing in the record to show that either party contemplated that something other than $100,000 was the actual maximum limit.  *See Loretto*, 817 P.2d at 242-43.  Accordingly, the Court concludes that both parties intended to define the Reserved Claim term with reference to another contract term, the $100,000 ceiling. *See id.* at 243.

Even though paragraph 6 acknowledges that the Release settles only the undisputed claims, that provision does not prevent the Release from defining, and thereby limiting, the Reserved Claim term.  Plaintiff bears the burden of convincing this Court that the Release is ambiguous by establishing that a "lack of clarity in the parties' expressions of mutual assent" renders the Reserved Claim term "fairly susceptible [to] different construction[s]."  *See Loretto*, 817 P.2d at 243 n.2; *Design Prof'l*, 940 P.2d at 1197, 1199.  Plaintiff's argument that the Release merely describes, rather than defines, the Reserved Claim is unavailing, particularly in light of the plain language of the Release.  Paragraph four clearly defines Plaintiff's Reserved Claim: ". . . his claim against Allstate for an additional $50,000.00 in [UM] coverage (the disputed "Reserved Claim")."  Moreover, the phrase "for an additional $50,000.00" clearly limits the

word "claim." (*See* Release at ¶ 4). The final WHEREAS paragraph only supports this reasonable interpretation. (*See* Release at 1) (" . . . John G. Loehr expressly reserves his right to seek an additional $50,000.00 in [UM] coverage from Allstate . . . .").

An ambiguity does not arise simply because the parties each favor a different interpretation of the Release. *See Battishill*, 127 P.3d at 1115. New Mexico favors the reasonable interpretation of a contract, and the reasonable interpretation of the Release here shows that the parties limited the Reserved Claim, not that the parties merely sought to describe their conflict. *Loretto*, 817 P.2d at 244 n.5. Neither the Release nor the Reserved Claim term are ambiguous, and the Court will not strain to find an ambiguity where one does not exist. *See Battishill*, 127 P.3d at 1115.

The Court is also confident in declaring the Release unambiguous because New Mexico law favors settlement, especially where the insured is represented by counsel. *See Battishill*, 127 P.3d at 1114; *Romero*, 803 P.2d at 248*; Atnip*, 692 P.2d at 1349; H*endren*, 672 P.2d at 1139, 1141; *Ratzlaff*, 646 P.2d at 591. This is not a case where an insured blindly signed away his rights. Here, an attorney, not a layman with limited knowledge of insurance law, negotiated the Release. *See Battishill*, 127 P.3d at 1114; *Romero*, 803 P.2d at 248. Plaintiff's attorney even went so far as to draft at least some portion of the Release (*see* Ex. 3 to Def.'s Mem. Supp. Mot. Partial Summ. J.), so even if there were some ambiguity in the Release, the Court could not strictly construe the ambiguity against Defendant. *See Loretto*, 817 P.2d at 244 n.5. The New Mexico Court of Appeals decided *State Farm Mut. Auto. Ins. Co. v. Marquez* on June 11, 2001, exactly four months before Plaintiff agreed to the terms of the Release. Consequently, Plaintiff's attorney had a meaningful opportunity to inform herself about equivalent coverage and adjust

13

her bargaining position accordingly.  The possibility that Plaintiff's attorney failed to familiarize herself with recent developments in insurance law does not render the Release non-binding or ambiguous.  *Cf. Atnip*, 692 P.2d at 1349.

Even viewing the evidence and inferences in the light most favorable to Plaintiff, the Court finds that there is no genuine issue of material fact with regard to ambiguity in the Release.  Plaintiff comes forth with no "specific facts" that could lead a rational trier of fact to conclude that the Release is ambiguous.  *See Adler*, 144 F.3d at 671.  Without evidence, Plaintiff's "description argument" is transformed into a mere conclusory allegation, *see White*, 45 F.3d at 363, especially in light of New Mexico's preference for counseled settlements. Consequently, interpretation of the contract is a question of law and not subject to an evidentiary hearing.[5]  *See Loretto*, 817 P.2d at 244.  The Court declares the Release unambiguous, as a matter of law.  *See* 28 U.S.C. § 2201.  The Court hereby **GRANTS** partial summary judgment to Defendant on the issue of interpretation of the Release.

Nevertheless, ambiguity is not Plaintiff's only defense to the Release.  Under New Mexico law, Plaintiff may avoid the Release if there is clear and convincing evidence "of misrepresentation, fraud, undue influence, coercion, or mutual mistake."  *Hendren*, 672 P.2d at 1139.  Given that the New Mexico Court of Appeals decided *State Farm Mut. Auto. Ins. Co. v. Marquez* four months prior to the date of the Release, and given the contentions Plaintiff puts forth in his deposition (*see* Dep. John G. Loehr at 61, 63, 66, 70), the Court cannot say that no jury could find for Plaintiff on the basis "of misrepresentation, fraud, . . . or mutual mistake."

---

[5]  Because the parties did not fully address whether entitlement to an evidentiary hearing on the matter of contract interpretation is a question of state or federal law (*see* Def.'s Mem. Supp. Mot. Partial Summ. J. at 5; Pl.'s Resp. to Def.'s Mot. Summ. J. at 4-6), especially where parol evidence may be involved, the Court does not decide that issue.  Suffice it to say that both rules require an evidentiary hearing when material facts are at issue.  *See Loretto*, 817 P.2d at 244; *Hardage*, 982 F.2d at 1496.  As indicated, that is not the case here.

*See Hendren*, 672 P.2d at 1139.  More discovery is required on this issue, as well as on the matter of good faith and fair dealing.  *See id.*, 672 P.2d at 1141.  Accordingly, the Court hereby **DENIES** Defendant's Motion for Partial Summary Judgment on the matters of misrepresentation, fraud, mutual mistake, and good faith and fair dealing.

### B.    The Policy

In light of the Court's finding that the Release limits Plaintiff's Reserved Claim to $50,000, regardless of the amount available under the policy, the Court currently sees no need to determine the maximum recovery amount available under the policy.  Consequently, Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot.

## IV.    CONCLUSION

The Release is unambiguous and, by its clear language, limits Plaintiff's Reserved Claim to a maximum of $50,000.  In this context, the issue of whether New Mexico law requires equivalent UM coverage beyond the contemplated $100,000 maximum is irrelevant. Nevertheless, the questions of misrepresentation, fraud, mutual mistake, and good faith and fair dealing remain open.

**WHEREFORE,**

**IT IS ORDERED** that Defendant Allstate's Motion for [Partial] Summary Judgment [Doc. 21], filed September 14, 2007, is **GRANTED** with regard to the issue of interpretation of the Release and **DENIED** with regard to the matters of misrepresentation, fraud, undue influence, coercion, mutual mistake, and good faith and fair dealing.  Plaintiff 's Motion for Partial Summary Judgment [Doc. 34], filed January 14, 2008, is **DENIED** as moot.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE